IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ELISHA COOLEY, et al.          )
                               )
      Plaintiffs,              )
                               )
v.                             )          CIVIL ACTION NO. 2:03-cv-681-A
                               )
GREAT SOUTHERN WOOD            )
PRESERVING, INC.               )
                               )
      Defendant.               )

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment filed by Great Southern Wood Preserving, Inc. ("Great Southern" or "Defendant") on April 1, 2004 (Doc. # 16).

The original Complaint in this case was filed on June 27, 2003. This court entered an order striking the original complaint on October 7, 2003. On October 17, 2003, Elisha Cooley, Willie Hackett, Jr., William J. Davis, Michael Stephens, and Clifford Edgar ("the Plaintiffs") filed an amended complaint. The Plaintiffs, all of whom are or were African-American employees of Great Southern, raised claims for employment discrimination under Title VII and retaliation under Title VII.

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Id. at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324.  To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.  See Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

2

The summary judgment rule is to be applied in employment discrimination cases as in any other case.  Chapman v. A1 Transport, 229 F.3d 1012, 1026 (11th Cir. 2000) (en banc).

## III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movants:

Great Southern's business involves treating and shipping lumber products for outdoor building as well as utilizing its truck fleet to haul other companies' freight.  Since 1997, it has employed between thirty to forty drivers at any given time.  In July of 1998, Great Southern obtained its right-to-haul authorization, which allows it to haul other companies' freight in addition to its own products.  Load assignments are based upon driver availability, Department of Transportation regulations regarding service hours for drivers, and prior to December 3, 2002, attempted to accommodate drivers' preferences to not be assigned loads that would require them to stay overnight.  Great Southern also assigns loads in the most efficient manner possible, including considering the possibility of picking up return loads and making drops at nearby locations.  Since 1998, seniority has not been a factor in load assignments.  Most drivers do not drive the same route every day, but instead are assigned to a variety of changing routes.  Since December 3, 2003, Great Southern has switched from dispatching out of Mobile, Alabama to a central dispatching system operated out of Abbeville, Alabama.  As a result of this change, all drivers are now subject to the possibility of being required to take overnight loads.

Great Southern regards an employee refusing a load assignment as a serious matter.  It has terminated a number, or suggested quitting to a number, of employees for refusing to carry loads.  Included among this list of those terminated or those encouraged to quit are several white

drivers: Mathew Butler (terminated for refusing to carry a load to Monroe, Louisiana), Roger Berry (terminated for refusing to carry a load that was going to Mobile and Citronenelle, Alabama), James Jordan (who was informed that he could take his assigned load or quit, and he quit), and Larry Roper (terminated for refusing to carry an assigned load).

Before August 5, 2002, the amount of money a truck driver could make driving for Great Southern varied depending on the category of loads that the driver would accept (overnight stays paid more than day runs), number of days worked, working on Saturdays, whether back-hauls were available from the destination of the drop-offs, whether the load had to be tarped, the number of drops, and whether the load was timely dropped off at the delivery site. The availability of back-hauls depends on whether the customers have anything that they require to be shipped back. Drivers received 25.5% of the gross revenue of the load delivered. The gross revenue previously depended on the board footage on the truck and the destination of the truck. On October, 4, 2002, Great Southern altered its method of charging for loads by instituting a flat rate system with these rates being determined by the distance, traffic congestion in and around the destination, market rate, and opportunities for back-hauls. In general, a driver willing to take a load farther, that would require an overnight stay, would be paid more.

On August 5, 2002, Great Southern introduced some changes in its compensation system. It introduced a seniority element to its compensation affecting a driver's guaranteed weekly pay and percentage of gross load revenue. The bonuses for overnight and tarped deliveries continued, but were reduced. If the driver was forced to wait to deliver, if the Defendant could recover a detention fee from the customer, such a fee was awarded to the driver. The compensation scheme established the following base pay/percentage of gross load pay scale with

the driver receiving the higher of the two: (1) New Hires, 425 dollars minimum or 25.5%), (2)

one year, 450 dollars minimum or 26%, (3) three year, 475 dollars minimum or 26.5%, (4) five

year, 525 dollars minimum or 27%, (5) seven year, 550 dollars minimum or 27.5%, and (6) ten

year, 600 dollars minimum or 27.5%.

African-American drivers have repeatedly been among the highest compensated drivers

working for Great Southern.  For example, in 2003 and in 2001 three drivers made over fifty

thousand dollars; two of those drivers are African-American.  In 2001, one of those drivers was

Plaintiff Cooley.  Great Southern's trucks are assigned on the basis of the physical conditions of

its vehicles and the loads that drivers run.

## IV. DISCUSSION[1]

A.    Plaintiff Cooley

---

[1]  There a number of claims discussed in the course of this opinion where the Plaintiffs
have failed in their motions and memoranda to make their case.  "There is no burden upon the
district court to distill every potential argument that could be made based upon the materials
before it on summary judgment.  Rather, the onus is upon the parties to formulate arguments;
grounds alleged in the complaint but not relied upon in summary judgment are deemed
abandoned."  Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir.) (citation
omitted), cert. denied, 516 U.S. 817, 116 S.Ct. 74, 133 L.Ed.2d 33 (1995); see also Road
Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp., 10 F.3d 1563, 1568 (11th
Cir.), cert. denied, 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994) (holding that district
court "could properly treat as abandoned a claim alleged in the complaint but not even raised as
a ground for summary judgment").

Additionally, the court has denied, in a separate order entered on this day, the inclusion
of the affidavits of Marti Cunningham, Kenneth Fells, Kenneth Asberry, and Frank Russell and
denied Plaintiffs' motion to supplement their evidentiary submissions with the declarations and
related exhibits of Plaintiffs Elisha Cooley, Willie Hackett Jr., William J. Davis, and Michael
Stephens (Doc. # 58).  Despite the exclusion of the evidentiary items, the court finds that this
proffered evidence could not remedy the Plaintiffs' failure to establish a prima facie case under
Title VII, and its consideration would not have changed the outcome of this Opinion and Order.

In his complaint, Cooley contends that the Defendant discriminated on the basis of race by assigning more lucrative paying loads to white drivers in violation of the company's seniority policy,[2] allowing white drivers to refuse loads that would not pay as much, severely disciplining him on November 20, 2002, denying him promotions in favor of less senior or qualified white employees, and discriminating against him in his terms and conditions of employment.[3]  Also, Cooley contends that Great Southern retaliated against him for filing an EEOC charge.

1.      Intentional Racial Discrimination

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Where, as here, the plaintiff seeks to prove intentional discrimination on the basis of race by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under this framework, a plaintiff must establish a prima facie case of discrimination.  Id. at 802.  After the plaintiff establishes a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action.  Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)  If the employer does so, then the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence, to establish a prima facie

_____

[2]  All of the Plaintiffs raise this claim alleging a discriminatory violation of the seniority policy; the court addresses these claims collectively later in this opinion.

[3]  All of the Plaintiffs raise this generalized claim of discrimination in the terms and conditions of employment; the court addresses these claims collectively later in this opinion.

6

case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.  Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997).  The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Burdine, 450 U.S. at 256; Combs, 106 F. 3d at 1534.

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination."  Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 153 (2000).  Cooley, who is black, alleges that he was discriminated against on the basis of race.  An individual's opinion that he or she is the victim of discrimination on the basis of race is not sufficient, without further evidence, to establish a prima facie case of race discrimination.  Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997).  Nor will "mere conclusory allegations and assertions . . . suffice" to establish the Plaintiff's prima facie case.  Earley v. Champion Int'l Corp., 907 F.2d 1077 (11th Cir. 1990).

"A plaintiff establishes a prima facie case of race discrimination under Title VII by showing: (1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job."  Holifield, 115 F.3d at 1562 (citing McDonnell Douglas Corp., 411 U.S. at 802).  "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination."  Id. (citing Williams v. Ford Motor Co., 14 F. 3d 1305, 1308 (8th Cir. 1994); Burdine, 450 U.S. at 253-54).

a.      White Drivers Being Allowed to Refuse to Carry Loads That Paid Less

Cooley alleges in his complaint that white drivers were allowed to refuse loads that did not pay as much money.  He fails to offer any evidence, beyond mere conclusory statements.  He also fails to offer the court a comparator who is similarly situated and who was treated more favorably than he was.  As part of Cooley's prima facie case, he must show that Great Southern treated similarly-situated employees outside his classification more favorably than himself.  Coutu v. Martin County Bd. of County Comm'rs, 47 F.3d 1068, 1073 (11th Cir. 1995).  If a plaintiff fails to show the existence of a similarly-situated employee, summary judgment is appropriate where no other evidence of discrimination is present.  Id.; see also Baker v. Alabama Dept. of Public Safety, 296 F. Supp. 2d 1299, 1306 n. 3 (M.D. Ala. 2003).  Cooley has failed to offer evidence beyond a mere conclusory statement the Defendant allowed white drivers to refuse loads that did not pay as much and failed to identify a comparator.  Cooley also failed to cite the court to an occurrence in which he was forced to carry a load that was refused by a white employee; he has not provided evidentiary support showing an adverse action.  Furthermore, although Cooley fails to offer any evidence to support his contention, the Defendant presents evidence contradicting his conclusory assertions that different standards were applied to white drivers than to African-Americans drivers in terms of deciding who can refuse to carry loads.  Cooley offers no evidence to show that this explanation is mere pretext.  Accordingly, summary judgment is due to be granted as to Cooley's claim of race discrimination based on white drivers being allowed to refuse to carry loads that paid less.

b.      Promotions

8

Cooley similarly fails to cite any evidence from which a reasonable jury could determine that he was denied a promotion in favor of a less senior and less qualified white employee on the basis of race.  The Defendant offers evidence showing that the jobs referenced by the Plaintiff in his deposition, which are not referred to in his response to summary judgment motion, actually paid less and that qualification differences existed between the recipients of those positions and Cooley.  Not only has Cooley waived his claim by failing to reference this matter in his response to the Defendant's summary judgment motion, but his claim is also insufficiently advanced because he fails to offer a comparator, to cite to any evidentiary support for his claim, and to show that he suffered an adverse action, and the Defendant offers a legitimate non-discriminatory explanation, which Cooley fails to show is pretextual.  Accordingly, summary judgment is due to be granted as to this claim.

c.    Being More Severely Disciplined Than White Employees

Although Cooley does vaguely refer to being disciplined by his employer, his discussion of this issue is solely in the context of his retaliation claim.  He offers no evidentiary support to show that a similarly situated white employee was treated more favorably.  Also, Great Southern provides a legitimate non-discriminatory explanation that Cooley fails to show is pretextual. Furthermore, the Defendant offers evidence of similar disciplining of white employees for failing to make timely deliveries, and offer as a legitimate non-discriminatory explanation that it issued a warning to Cooley because it wanted him to make his deliveries in a timely fashion and he failed to do so.  Cooley does not show that this explanation is pretextual.  Consequently, summary judgment is due to be granted as to his racial discrimination claim related to being disciplined by his employer in November of 2002.

9

2.      Retaliation Claim

"[A] plaintiff alleging a retaliation claim under Title VII must begin by establishing a prima facie case; the plaintiff must show that (1) [he or] she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities."   Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 959 (11th Cir. 1997).  Title VII's protections against retaliation do not create an aegis or shield guarding against any and all retaliatory wrongs.  Baker, 296 F. Supp. 2d at 1306. The express statutory language prohibiting retaliation provides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3; see also Merriweather v. Alabama Dept. of Public Safety, 17 F. Supp. 2d 1260, 1273 n. 10 (M.D. Ala. 1998), aff'd 199 F.3d 443 (11th Cir. 1999) (unpublished opinion).  Thus, to satisfy the first prong of the prima facie case, an employee, who claims retaliation for opposing an employer's conduct, must have a good faith, objectively reasonable belief that such conduct was unlawful under Title VII.  Little, 103 F.3d at 960.  "If a plaintiff makes out a prima facie case of retaliation, the burden shifts to the defendant to produce legitimate reasons for the adverse employment action.  If the defendant does so, the plaintiff must show that the reasons the defendant gave were pretextual."  Brochu v. City of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir. 2002).

Cooley contends that he was retaliated against in violation of Title VII for filing an EEOC complaint.  The Plaintiff alleges that after filing an EEOC complaint he received a warning or a "write-up" for arriving at a delivery destination later than 7 a.m..  In fourteen years of service with Great Southern, Cooley had never previously received a warning.  To prove adverse employment action in a case under Title VII, "an employee must show a serious and material change in the terms, conditions, or privileges of employment.  Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001).  The Eleventh Circuit has indicated "that criticisms of an employee's job performance--written or oral--that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit." Id. at 1241.  Neither Cooley's position nor his pay was affected by this warning.  The Plaintiff fails to make a legal or factual showing of how this warning, as to which minimal factual evidence explaining the warning is presented to the court, constitutes an adverse action.

Furthermore, the warning that was issued to Cooley was in response to his failing to make his deliveries four times within one week at the time that they were scheduled to arrive, that is, by 7:00 a.m.  This delivery deadline was considered important by Great Southern because it ensured that its customers received their orders at the beginning of the work day and increased the potential for Great Southern's drivers to be able to accommodate back-haul orders.  Cooley does not offer evidence to support the conclusion that he was repeatedly late in the past without being issued a warning by Great Southern.  Before the more formal warning was issued, the dispatcher Hayes reminded Cooley that deliveries were to be made by 7:00 a.m..  Cooley argues

that customers preferred that he arrive after 8:00 a.m. so that they can load and dispatch their

own trucks.  The Plaintiff's citation to his deposition does not support this contention, nor is it

apparent to the court how this contention is relevant to whether or not Great Southern was

retaliating in disciplining Cooley for not timely delivering his loads.  This contention is little

more than a statement that Cooley would, if empowered to do so, run Great Southern's delivery

system differently than his employer has chosen to do; however, this sort of disagreement with

the business judgment of his employer is irrelevant for purposes of Title VII analysis.  Combs,

106 F.3d at 1543 (holding that "federal courts do not sit to second-guess the business judgment

of employers.").

    With regard to Cooley's contention that he was also retaliated against by being assigned

to worse load assignments, he cites to evidence showing that he was directed to make a delivery

in Jackson, Mississippi, then a follow-on delivery in Monroe, Louisiana, on his way back to

Mobile.  Cooley fails to show legally or factually how being given this assignment or any other

assignment constituted an adverse action.  The Defendant, on the contrary, offers evidence

showing that Cooley's pay actually would be increased through this follow-on delivery and that

it was also advantageous to the employer to have Cooley make the delivery.

    Cooley has failed to show that the actions taken against him were adverse, related to his

filing of an EEOC charge, or that his employer's legitimate non-discriminatory explanation is

prextual.  Accordingly, summary judgment is due to be granted as to this claim.

B.    Plaintiff Hackett

    In his complaint, Hackett contends that the Defendant discriminated on the basis of race

by assigning more lucrative paying loads to white drivers in violation of the company's seniority

policy,[4] allowing white drivers to refuse loads that would not pay as much, assigning better equipment and newer trucks to white drivers,[5] disciplining him more severely than white employees for infractions, suspending him for three days, and discriminating against him in his terms and conditions of employment.[6]  Also, Hackett contends that Great Southern retaliated against him for filing an EEOC charge.

1.     Intentional Racial Discrimination

a.     Allowing White Drivers to Refuse Loads

Hackett references one incident with regard to being discriminated against by being assigned a load that a white employee was allowed to refuse.  He fails to show, however, why or how being assigned this load constituted an adverse employment action.  The load that Hackett transported paid more money than the load that the other driver was assigned to after refusing the first load.  To prove adverse employment action in a case under Title VII, "an employee must show a serious and material change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances."  Davis, 245 F.3d at 1239.  The court is not persuaded that Hackett has shown that being required to deliver this load that Lee Bull, a white driver refused, constitutes an adverse action.  Also, Hackett says that he was required to tarp a load;

---

[4]  All of the Plaintiffs raise this claim alleging a discriminatory violation of the seniority policy; the court addresses these claims collectively later in this opinion.

[5]  All of the Plaintiffs other than Cooley raise this complaint; the court addresses these claims collectively later in this opinion.

[6]  All of the Plaintiffs raises this generalized claim or discrimination in the terms and conditions of employment; the court addresses these claims collectively later in this opinion.

however, tarping a load results in the driver being paid more.  Hackett fails to show legally or factually how this constitutes an adverse action.  Summary judgment is due to be granted as to this claim.

b.     Three Day Suspension

In the Introduction to the Defendant's Summary Judgment Memorandum, it asserted that Hackett "abandoned the suspension claim in his deposition by stating . . . his termination was the only discipline . . . he was complaining about in this case."  Id. at 2.  Plaintiff Hackett, both in his original Memorandum in Opposition to Summary Judgment and his Modified Memorandum, in his introduction section indicates that he agrees with the Defendant's introduction.  Also, Hackett does not reference this claim in either of his Memorandums in Opposition to the Defendant's Summary Judgment Motion.  Accordingly, summary judgment is due to be granted on this claim, which has been waived/abandoned.

2.     Discrimination in Being Disciplined More Severely and Retaliation

The court addresses together Hackett's claim that he was discriminated against by being disciplined more severely than white employees for his infractions and retaliated against in violation of Title VII because the claims fail for similar reasons.

Regarding his termination as a driver for Great Southern, Hackett states as follows: "Dewane Hayes misinformed Bob White that Mr. Hackett had not timely reported a speeding ticket of July 29, 2002, within 48 hours in accordance with Great Southern's Safety Policy.  Bob White relied upon this misinformation in making the decision to terminate Mr. Hackett's employment."  Plaintiffs' Opposition Brief at 2.  Great Southern indicates that "it was the combination of two speeding tickets plus [White's] belief that Mr. Hackett has failed on two

occasions to report those speeding tickets within 48 hours as required by Great Southern's Safety

Policy which was the basis for his termination decision."  Defendant's Brief at 33.  The problem

for Hackett is that whether White was correct or incorrect in his assessment of whether he had

been caught speeding twice and failed to report either ticket within forty-eight hours as required

by company policy is not relevant to whether Hackett's termination was in violation of Title

VII.[7] Hackett has not offered any assertion or showing that White acted in bad faith in acting

upon this information, knowing it to be false, or that Hayes acted in bad faith from racial or

retaliatory motives in conveying such information.  The Eleventh Circuit found that whether the

employee actually acted improperly is irrelevant; it is the employer's belief that is the key.  Elrod

v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (citing Hawkins v. Ceco Corp.,

883 F.2d 977, 980 n. 2 (11th Cir. 1989) (noting "[t]hat the employee did not in fact engage in

misconduct reported to the employer is irrelevant to the question whether the employer believed

the employee had done wrong."); Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th

Cir. 1988) (concluding that "[f]ederal courts 'do not sit as a super-personnel department that

reexamines an entity's business decisions.  No matter how medieval a firm's practices, no matter

how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA

does not interfere.  Rather, our inquiry is limited to whether the employer gave an honest

explanation of its behavior.'"); Moore v. Sears, Roebuck & Co., 683 F.2d 1321, 1323 n. 4 (11th

Cir. 1982) (stating that "for an employer to prevail the jury need not determine that the employer

was correct in its assessment of the employee's performance; it need only determine that the

---

[7]  For Great Southern truck drivers, failure to report even one speeding ticket within
forty-eight hours is a terminable offense.

defendant in good faith *believed* plaintiff's performance to be unsatisfactory . . . .") (emphasis in original); <u>Smith v. Papp Clinic, P.A.</u>, 808 F.2d 1449, 1452-53 (11th Cir. 1987) (indicating that "if the employer fired an employee because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is not 'because of race' and the employer has not violated § 1981.")); <u>see also</u> <u>Jones v. Gerwens</u>, 874 F.2d 1534, 1540 (11th Cir. 1989) ("even if a Title VII claimant did not in fact commit the violation with which he is charged, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation.").

        As part of the prima facie case, Hackett must show that his employer treated more favorably similarly-situated employees outside his classification.  <u>Coutu</u>, 47 F.3d at 1073.  If a plaintiff fails to show the existence of a similarly-situated employee, summary judgment is appropriate where no other evidence of discrimination is present.  <u>Id.</u>  The nature of the offenses committed and the nature of the punishments imposed are the most important factors in determining if employees are similarly situated in the disciplinary context.  <u>Silvera v. Orange County Sch. Bd.</u>, 244 F.3d 1253, 1259 (11th Cir. 2001); <u>McCaskill v. ConAgra Foods, Inc.</u>, 296 F. Supp. 2d 1311, 1317 (M.D. Ala. 2003).  "[F]or purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."  <u>Id.</u>  When considering the nature of the offense, "the comparator's misconduct must be nearly identical to the plaintiff's in order 'to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'"  <u>Id.</u>  "Exact correlation [, however,] is neither likely nor necessary, but the cases must

16

be fair congeners.  In other words, apples should be compared to apples."  Id. (quoting

Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989)).

   As for his discrimination claim, Hackett contends that Mike Oliveira a white driver "was

not terminated as swiftly as Mr. Hackett [and] . . . subsequent to [Oliveira] termination [he has]

been given contracts to carry loads for Great Southern . . .."  Id. at 6.  Oliveira did inform Great

Southern of his speeding tickets properly within forty-eight hours; consequently, he is not an

appropriate comparator.  With regard to showing that Oliveira's offense is more substantial or

serious than Hackett's due to the fact that he was also involved some accidents, the Plaintiff does

not raise this argument or provide support for this contention in his opposition to summary

judgment, and Oliveira was fired for his involvement in accidents.  Thus, Hackett has failed to

provide a similarly situated comparator or demonstrate that Great Southern's legitimate non-

discriminatory explanation is mere pretext.  His Title VII retaliation claim fails for the same

reason, that is he fails to show that the Defendant's legitimate non-discriminatory explanation for

his termination is mere pretext.

   Hackett also, for the first time, raises in his opposition to the Defendant's motion for

summary judgment, a contention that he was terminated because he expressed concerns about

the safety of carrying a double deck row roofing load.  Title VII's protections against retaliation

do not create an aegis or shield guarding against any and all retaliatory wrongs.  Baker, 296 F.

Supp. 2d at 1306.  The express statutory language prohibiting retaliation provides: "It shall be an

unlawful employment practice for an employer to discriminate against any of his employees . . .

because he has opposed any practice made an unlawful employment practice by this subchapter,

or because he has made a charge, testified, assisted or participated in any manner in an

investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3; see also

Merriweather, 17 F. Supp. 2d at 1273 n. 10. Thus, to satisfy the first prong of the prima facie

case, an employee who claims retaliation for opposing an employer's conduct, must have a good

faith, objectively reasonable belief that such conduct was unlawful under Title VII. Little, 103

F. 3d at 960. Title VII prevents discrimination on the basis of race, color, religion, sex, or

national origin. 42 U.S.C. § 2000e-2. Claims related to retaliation on the basis of complaints

about occupational safety are wholly unrelated to Title VII. Even if the court were to assume

that Great Southern retaliated on this basis, this conduct would not be protected by Title VII.

Furthermore, the Plaintiff has failed to show that the Defendant's legitimate non-discriminatory

explanation for his termination is mere pretext. Accordingly, summary judgment is due to be

granted as to Hackett's retaliation claim.

C.      Plaintiffs Davis, Stephens, and Edgar

        Plaintiffs Davis, Stephens, and Edgar contend that the Defendant discriminated on the

basis of race by assigning more lucrative paying loads to white drivers in violation of the

company's seniority policy,[8] allowing white drivers to refuse loads that would not pay as much,

assigning better equipment and newer trucks to white drivers,[9] and discriminating against them

in their terms and conditions of employment.[10] Also, these Plaintiffs contend that Great

Southern retaliated against them for filing an EEOC charge.

_____

        [8] All of the Plaintiffs raise this claim; the court addresses these claims collectively later
in this opinion.

        [9] All of the Plaintiffs other than Cooley raise this complaint; the court addresses these
claims collectively later in this opinion.

        [10] All of the Plaintiffs raises this generalized claim or discrimination in the terms and
conditions of employment; the court addresses these claims collectively later in this opinion.

18

1.       Intentional Racial Discrimination

Davis, Stephens, and Edgar allege in their complaint that white drivers were allowed to refuse loads that did not pay as much money.  They fail, however, to offer any evidence, beyond mere conclusory statements.  They also fail to offer the court a comparator who is similarly situated and who was treated more favorably.  As part of the Plaintiffs' prima facie case, they must show that their employer treated similarly-situated employees outside their classification more favorably than themselves.  Coutu, 47 F.3d at 1073.  If a plaintiff fails to show the existence of a similarly-situated employee, summary judgment is appropriate where no other evidence of discrimination is present.  Id.; see also Baker, 296 F. Supp. 2d at 1306 n. 3.  Davis, Stephens, and Edgar fail to offer evidence beyond mere conclusory statements that the Defendant allowed white drivers to refuse loads that did not pay as much; they fail to identify a comparator.  They also do not cite the court to an occurrence in which they were forced to carry a load that was refused by a white employee.  They have not provided the court with a legal argument coupled with evidentiary support showing an adverse action.  Furthermore, although the Plaintiffs fail to offer evidence to support their contention, the Defendant presents evidence contradicting their assertions that different standards were applied to white drivers than to African-Americans drivers in terms of deciding who can refuse to carry loads.   The Plaintiffs offer no evidence to show that this explanation is mere pretext.  Accordingly, summary judgment is due to be granted as to their claims of race discrimination based on white drivers being allowed to refuse to carry loads that paid less.

2.      Retaliation[11]

In their complaint, the Plaintiffs allege that they were retaliated against by being threatened with termination or in the case of Hackett, as previously discussed, actually being terminated in response to filing EEOC complaints.  "[A] plaintiff alleging a retaliation claim under Title VII must begin by establishing a prima facie case; the plaintiff must show that (1) [he or] she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities."  Little, 103 F.3d at 959.  Title VII's protections against retaliation do not create an aegis or shield guarding against any and all retaliatory wrongs.  Baker, 296 F. Supp. 2d at 1306.  The express statutory language prohibiting retaliation provides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3; see also Merriweather, 17 F. Supp. 2d at 1273 n. 10.  Thus, to satisfy the first prong of the prima facie case, an employee who claims retaliation for opposing an employer's conduct must have a good faith, objectively reasonable belief that such conduct was unlawful under Title VII.  Little, 103 F.3d at 960.  "If a plaintiff makes out a prima facie case of retaliation, the burden shifts to the defendant to produce legitimate reasons for the adverse employment action.  If the defendant does so, the plaintiff must show that the reasons the defendant gave were pretextual."  Brochu, 304 F.3d at 1155.

---

[11]  Cooley and Hackett both presented more precise claims of retaliation in addition to the claim asserted by all of the Plaintiffs in paragraph 22 of their amended complaint.

The Plaintiffs fail to show that they suffered an adverse action.  Davis says that Hayes informed him that he would not be written-up for failing to keep his pre-trip and registration books in his truck if Davis dropped this lawsuit.  To prove adverse employment action in a case under Title VII, "an employee must show a serious and material change in the terms, conditions, or privileges of employment.  Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances."  <u>Davis,</u> 245 F.3d at 1239.  The Eleventh Circuit has indicated "that criticisms of an employee's job performance--written or oral--that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit."  <u>Id.</u> at 1241.  Davis fails to provide this court with a factual or legal showing of how this write-up constitutes an adverse employment.  Davis provides no citation to any evidentiary support to show that he was threatened with termination.  Edgar indicated that Hayes also encouraged or attempted to get him to drop the lawsuit, but he states that "no pressure" was applied.  Edgar deposition at p. 75, line 4.  Edgar fails to cite to any evidentiary support to demonstrate that he was threatened with termination.  Stephens does indicate that he was threatened with being fired, but states that termination was to occur "if he did not take an assigned load."  Plaintiffs' Opposition Brief at 15.  The Defendant offers as its legitimate non-discriminatory reason for threatening to terminate employees that exact reason, refusal to take an assigned load.  The Defendant shows that it terminated employees who were white and who have not filed EEOC complaints on that basis.  Stephens fails to demonstrate that the Defendant's explanation is mere pretext.  Furthermore, it is not clear that such a threat would constitute an adverse employment action.  <u>See generally</u> <u>Stavropoulos v. Firestone,</u>

361 F.3d 610, 616-18 (11th Cir. 2004); see also, e.g., Soto v. John Morrell & Co., 315 F. Supp.

2d 981, 985 (N.D. Iowa 2004) ("Tanner's mere threats to fire Soto do not rise to the level of a

tangible employment action as Soto did not suffer a fiscal or employment related injury because

of them."); Helgeson v. American Int'l Group, Inc., 44 F. Supp. 2d 1091, 1098 (S.D. Cal. 1999)

("[a] mere threat of termination, however, is not an adverse employment action.  It had no effect

on the terms, conditions or duration of employment."); Chisholm v. Foothill Capital Corp., 3 F.

Supp. 2d 925, 937-38 (N.D. Ill. 1998) ("the mere threat of termination, standing alone, is only

the threat of an adverse employment action, not an adverse employment action itself.")

D.   More Lucrative Paying Loads Assigned to White Employees in Violation of Seniority
     Policy

     Cooley, Hackett, Davis, Stephens, and Edgar argue that Defendant discriminated by

assigning more lucrative jobs paying loads to white employees in violation of the company's

seniority policy.  The Defendant contends that any such claims are time barred.  Great Southern

eliminated seniority as a factor in load assignments in 1998.  The Plaintiffs argue that pay load

assignments not being based on seniority after 1998 is disputed.  The only cited support offered

by the Plaintiffs for this being a disputed fact is that the percentage that a driver earns is based

upon seniority and the minimum pay for drivers is based upon seniority.  The Plaintiffs,

however, cite to no evidentiary support to refute the evidence offered by the Defendant that the

load assignments were not made on the basis of seniority later than 1998.  Consequently, the

Defendant understandably reasons, and the court agrees, that any claim associated with a

violation of that policy in assigning higher paying loads to white drivers must logically have

occurred no later than 1998.

Title 42 U.S.C. § 2000e-5(e)(1) specifies the prerequisites that a plaintiff must satisfy before filing a private civil action under Title VII. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002). According to this provision, "[a] charge . . . shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1) "Each discrete discriminatory act starts a new clock for filing charges alleging that act." Morgan, 536 U.S. at 113.[12] If a plaintiff fails to file an EEOC charge before the 180-day limitations period, the plaintiff's subsequent lawsuit is time barred and must be dismissed for failure to exhaust administrative remedies. Brewer v. Alabama, 111 F. Supp. 2d 1197, 1204 (M.D. Ala. 2000).

The Supreme Court has noted that "strict adherence" to this procedural requirement "is the best guarantee of evenhanded administration of the law." Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980). By choosing what is an obviously short deadline, "Congress clearly intended to encourage the prompt processing of all charges of employment discrimination." Id. Indeed, this procedural rule is not a mere technicality, but an integral part of Congress' statutory scheme that should not "be disregarded by courts out of a vague sympathy for particular litigants." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984).

---

[12] "After Morgan, a one-time employment event, including the failure to hire, promote, or train, and likewise dismissals and demotions, is a discrete action that 'constitutes a separate actionable unlawful employment practice,' and therefore, should place an employee on notice that a cause of action has accrued." Pegram v. Honeywell, Inc., 361 F.3d 272, 280 (5th Cir. 2004) (citing Morgan, 536 U.S. at 114).

In the present case, the Plaintiffs filed their respective EEOC charges in 2002 or 2003.

Therefore, the charge is timely only if the unlawful employment action against the Plaintiff

"occurred" on or after 180 days before the filing of the respective EEOC charges.  Morgan, 536

U.S. at 109 (stating that "[a] claim is time barred if it is not filed within these time limits.").  The

claim that the Defendant violated a seniority policy, which no longer existed after 1998, in

making load assignments cannot raise a claim that occurred within 180 days of the filing of any

of these EEOC claims.  Accordingly, the Plaintiffs' claims that the Defendant violated its

seniority policy in making pay load assignments are time barred, and summary judgment is due

to be granted as to these claims.

E.      Racially Hostile Work Environment

The Plaintiffs did not raise a hostile work environment claim in their amended complaint

nor did they seek leave for a second amended complaint to include such a claim.[13]  Because the

Plaintiffs failed to plead the claim earlier, the Defendant would be prejudiced by having this

claim raised at this late stage of the proceedings.  The Plaintiffs have not sought leave to amend

their complaint to include such claims, no such claims were included in the pretrial order, and

the court declines to consider the Plaintiffs' hostile work environment claims.  Shanahan v. City

of Chicago, 82 F.3d 776, 781 (7th Cir.1996) (stating that "plaintiff may not amend his complaint

through arguments in his brief in opposition to a motion for summary judgment"); Stallcop v.

Kaiser Found. Hosps., 820 F.2d 1044, 1050 n. 5 (9th Cir. 1987); Lawmaster v. Ward, 125 F.3d

1341, 1346 n. 2 (10th Cir. 1997) ("[b]ecause Mr. Lawmaster failed to raise the Fifth Amendment

---

[13]  The Plaintiffs original complaint, which was stricken by the court, also did not contain any reference to a hostile work environment claim.

claim against the United States in his complaint, we refuse to consider it."); Beckman v. U.S. Postal Serv., 79 F. Supp. 2d 394, 407 (S.D. N.Y. 2000) (quoting Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 170 F.R.D. 111, 119 (S.D. N.Y. 1997)) (noting that "[b]ecause a failure to assert a claim until the last minute will inevitably prejudice the defendant, . . . "it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment."); Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp., 963 F. Supp. 1342, 1359 (S.D. N.Y. 1997) (regarding "attempting to add a claim never addressed, or even hinted at, in the complaint." The court concluded that "[s]uch a step is inappropriate at the summary judgment stage, after the close of discovery, without the Court's leave, and in a brief in opposition to a dispositive motion.").

F.     Assignment of Better Equipment and Newer Trucks to White Drivers

Plaintiffs Hackett, Davis, Stephens, and Edgar all raise claims that, in violation of Title VII, the Defendant assigned better equipment and newer trucks to white drivers without regard to seniority and rotational assignment policy, or in the case of Davis also additionally without regard to his disability. The only reference with accompanying citation to this claim in the Plaintiffs' Opposition Brief to the Defendant's Summary Judgment Motion cites to the Plaintiffs' complaint. There is one other reference in this memorandum to better equipment being assigned to white drivers, but no evidentiary citation is made nor are facts relevant to this issue presented in the facts section. The Plaintiffs fail to adequately advance their claim because they fail to offer a comparator, to cite to any evidentiary support for their claim, to show that they suffered

25

an adverse action in being denied use of better equipment or newer trucks,[14] and the Defendant offers a legitimate non-discriminatory explanation for the assignment of its trucks, which the Plaintiffs fail to show is pretextual.  Accordingly, summary judgment is due to be granted as to this claim.

G.      Generalized Claim of Discrimination as to Terms and Conditions of Employment

        In its complaint, all of the Plaintiffs allege that the Defendant discriminated against them with regard to the terms and conditions of their employment based on race in violation of Title VII.  No more specific information is offered in the complaint nor is this generalized claim referenced in the Plaintiffs' Memorandums in Opposition to summary judgment.  The Plaintiffs have not developed or maintained this claim.  The court concludes that summary judgment is due to be granted as to this generalized claim, which has been waived/abandoned.

## V. CONCLUSION AND ORDER

        For the reasons discussed above, the Defendant's Motion for Summary Judgment is due to be Granted as to all of the Plaintiffs' claims.  It is hereby ORDERED as follows:

        1) Defendant's Motion for Summary Judgment (Doc. # 16) is GRANTED.

        2) A separate judgment will be entered in accordance with this Memorandum Opinion and Order.

        Done this 30th day of September, 2004.


                                /s/ W. Harold Albritton
                                W.  HAROLD ALBRITTON
                                SENIOR UNITED STATES DISTRICT JUDGE

---

        [14] They fail to offer evidentiary support that they were denied this upgraded and newer equipment or a legal/factual showing that such a denial would constitute an adverse action.